## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | |
|---|---|
| Kimberly A. Ponder, | |
| Plaintiff, | |
| v. | |
| County of Winnebago, Illinois, Frank Haney, Paul Arena, Jas Bilich, David Boomer, Aaron Booker, John Butitta, Jean Crosby, Daniel Fellars, Dave Fiduccia, Burt Gerl, Angie Goral, Joe Hoffman, Dave Kelley, Keith McDonald, Timothy Nabors, Jr., Dorothy Redd, Jaime Salgado, Steve Schultz, Dave Tassoni, Jim Webster, and Fred Wescott, | Case No. 3:20-cv-50041 <br><br> Honorable Iain D. Johnston |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kimberly Ponder brings this action against the County of Winnebago, Illinois ("the County"), and various members of the Winnebago County Board, including its former Chairman, Frank Haney. She alleges age and sex discrimination, a violation of her right to due process, two counts of retaliatory discharge under state law, and a violation of the Family and Medical Leave Act. Both the County and the individual defendants ("the board members") now move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Ponder has failed to state a claim and that the individual board members are not suable entities. For the reasons explained below, that motion [46] is granted in part and denied in part.

1

## I.     Background

Plaintiff Kimberly Ponder worked for the County's human resources department for about eighteen years.[1] Eventually, she was promoted to Human Resources Director, which required her to discipline and potentially terminate employees. She alleges that, despite anti-nepotism policies, the County has a history of hiring family members of past and present board members. In her role as Human Resources Director, she disciplined and terminated employees. She alleges that on multiple occasions board members confronted her about her decisions to discipline or terminate their family members, and that she was warned that she risked her own job if she did not reverse course. Nevertheless, she persisted.

Later, the County's outside counsel interviewed Ponder as part of a sexual harassment complaint by County Administrator Carla Paschal against Chairman Haney. In what was apparently a surprise to Administrator Paschal, Ponder stated that she did not believe Haney was guilty of sexual harassment but that he had "bullied and brow beaten" Paschal. Dkt. 44, at 11.[2] Instead, she asserted that the Board created a hostile work environment for all involved.

In an alleged attempt to reduce Chairman Haney's authority, the Board modified the relevant ordinance to give themselves, along with Paschal, firing privileges over certain positions, which included Ponder's position as the Human Resources Director. On September 19, 2019, the Board voted to fire Ponder and

---

[1] The factual allegations are taken from Ponder's second-amended complaint. Dkt. 44.
[2] The Court cites to the page numbers of Ponder's complaint rather than paragraph numbers because the complaint contains multiple errors in its paragraph numbering scheme.

2

replace her with one of her former subordinates. She asserts that Paschal (who, by the way, is not a named defendant) engineered the termination by causing "a report to issue critical of" Ponder and using it as "pretext and subterfuge" in retaliation for Ponder's failure to substantiate the sexual harassment claims against Chairman Haney. *Id.* at 12. She continues that her "termination directly resulted from [her] truthful statements about the alleged sexual harassment of County Administrator Carla Paschal by the man who originally appointed her, Frank Haney." *Id.* In another section of her complaint, Ponder alleges that her termination was the result of a feud between the individual board members and former Chairman Frank Haney and that her termination was an extension of this feud.

Notwithstanding the alleged feud between former Chairman Haney and the other board members, Ponder alleges that she was also fired because of her age and sex and that the County has traditionally discriminated against women. Although her replacement was the same age and gender, Ponder asserts that this was merely a strategy in subterfuge and that the board members' intent was to eventually hire a younger male to replace her.[3] She alleges that the three finalists for the permanent Human Resources Director position were all young white men.[4] She also asserts that she was "not free to do her job, voice her opinions, or operate in the method and manner that male heads of departments were." *Id.* at 5. Invoking the

---

[3] She alleges that the position is effectively vacant because the temporary replacement has not assumed the full duties of her former position and is not qualified to do so anyway.
[4] She also contends that the County hired younger white men for the Chief Financial Officer and Deputy County Administrator positions. The Court is unsure what Ponder intends to convey by injecting the race of these individuals, as no race claim has been pleaded.

3

Equal Pay Act, Ponder further claims that she was not paid the same salary as other male management-level employees.

Ponder now brings this six-count suit in which she claims age and sex discrimination (Counts I and II), failure to afford her due process in her termination (Count III), two counts of retaliatory discharge (Counts IV and V), and a violation of the Family and Medical Leave Act (Count VI), along with what appears to be a free-floating Equal Pay Act claim.

## II.    Analysis

All parties to the case argue that the Court only dismisses complaints under Federal Rule of Civil Procedure 12(b)(6) if the plaintiff "can prove no set of facts which would entitle him to relief." Dkt. 47, at 2; Dkt. 56, at 3. That was certainly the rule under *Conley v. Gibson*, 355 U.S. 41 (1957). But the "no set of facts" standard has not been good law in federal courts for quite some time now. *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 560–63 (2007) (explaining in detail why the no-set-of-facts standard "has earned its retirement"). The Court begs counsel to stop citing to *Conley*'s "no set of facts" standard. *Twombly* and *Iqbal* are over a decade old. Neither Supreme Court decision is in its infancy. Indeed, *Twombly* is a teen now.

Instead, to defeat a motion to dismiss, the plaintiff must have alleged facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. This means that a plaintiff's well-pleaded factual allegations must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 566 U.S. 622, 678 (2009). The Court accepts

4

as true all the plaintiff's well-pleaded allegations and views them in the light most favorable to the plaintiff. *Landmark Am. Ins. Co. v. Deerfield Constr., Inc.*, 933 F.3d 806, 809 (7th Cir. 2019). The burden of persuasion on a motion to dismiss rests with the defendant. *Reyes v. City of Chicago*, 585 F. Supp. 2d 1010, 1017 (N.D. Ill. 2008) ("On a motion to dismiss, defendants have the burden of demonstrating the legal insufficiency of the complaint – not the plaintiffs or the court."). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 545. "But the proper question to ask is still '*could* these things have happened, not *did* they happen.'" *Carlson v. CSX Transp. Inc.*, 758 F.3d 819, 827 (7th Cir. 2014) (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404–05 (7th Cir. 2010) (emphasis in original)).

### a. Individual Defendants as Proper Parties

The defendants argue that the former Chairman and the individual board members are not proper parties to this suit. Dkt. 47, at 2. First, only Count III (Due Process) and Count VI (Family and Medical Leave Act) are pleaded against all defendants. The other claims name only the County.

Whether the individual board members are proper defendants is governed by Illinois state law. Fed. R. Civ. P. 17(b)(1) (explaining that capacity to be sued for an individual is determined "by the law of the individual's domicile"). Defendants point to 55 Ill. Comp. Stat. 5/5-1001, 1004. Dkt. 47, at 3. Section 5/5-1001 provides for the name of each county under which that county can sue and be sued. Section 5/5-1004

provides that "[t]he powers of the county as a body corporate or politic, shall be exercised by a county board." Although the County Board exercises the powers of the County, the County and not the Board is the proper party to a suit. In Illinois, the County Board is not a separate legal entity from the County itself. *Haney v. Winnebago Cnty. Bd.*, No. 3:19-cv-50191, 2020 U.S. Dist. LEXIS 46645, at *11 (N.D. Ill. Mar. 18, 2020).

Defendants see these Illinois statutes as confirmation that the board members, as individuals, are not proper parties, but the text of those statutes do not address this question. In *Haney*, a case in which the same former chairman was a plaintiff, the court dismissed the Winnebago County Board *sua sponte* but did not remove the individual board members. *Id.* Furthermore, the key distinguishing factor between the Board and the individual board members is that the members are separate legal entities. Unlike dependent government bodies that lack a legal entity independent from their parent governmental units, the board members are people with separate legal identities. *Glass v. Fairman*, 992 F. Supp. 1040, 1043 (N.D. Ill. 1998) ("In order to be a suable entity under Illinois law, 'defendant must have a legal existence, either natural or artificial.'") (quoting *Bailes v. Streator Police Dep't*, No. 96 C 5610, 1997 U.S. Dist. LEXIS 3789, at *9 (N.D. Ill. Mar. 27, 1997)); *see also Bonilla v. City Council of Chicago*, 809 F. Supp. 590, 600–01 (N.D. Ill. 1992) ("As a result, although a municipal corporation and the individual members of its city council may have capacity to sue and be sued, the council itself may not be a legal entity for purposes of Rule 17(b).") (citation omitted).

Here, the defendants have not met their burden. They have not pointed to any state law establishing the board members' incapacity to be sued. Thus, the Court applies the general rule that they are suable entities because they possess a separate legal identity from that of the County. Whether they had any individual involvement, on the other hand, is another matter. The motion asserts that individual County board members who voted against termination should not be sued, which is a valid point. But these specific board members have not been identified in the briefing on this motion to dismiss.

### b. Counts I and II—Age and Sex Discrimination

To start, counsel are reminded that it does not take much to plead sufficient allegations in an employment discrimination case. *See Freeman v. Metro. Water Reclamation Dist.*, 927 F.3d 961, 965 (7th Cir. 2019) ("Rather, to proceed against the District under § 1983 or Title VII, Freeman needed only to allege—as he did here—that the District fired him because of his race.") (citing *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998) ("'I was turned down for a job because of my race' is all a complaint has to say.")). Counsel should give due consideration to the low pleading standard before filing a Rule 12(b)(6) motion to dismiss claiming an insufficiency of facts in a complaint alleging employment discrimination.

In Counts I and II, Ponder asserts age and sex discrimination. In arguing that Ponder fails to state a claim, defendants point to the familiar procedure set forth in *McDonnell Douglas*. They contend that Ponder must show (1) that she is a member of a protected class, (2) that she was performing her job satisfactorily, (3)

that she suffered a materially adverse employment action, and (4) that she was treated less favorably than similarly situated employees outside of her protected class. Dkt. 47, at 4–5. But this is the pleading stage. Ponder is not required to prove anything yet.

In *Carlson v. CSX Transportation*, the Seventh Circuit explained that plaintiffs "alleging sex discrimination under Title VII 'need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her sex.'" 758 F.3d 819, 827 (7th Cir. 2014) (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008)). That standard is not limited to sex discrimination claims. In *Swierkiewicz v. Sorema N.A.*, the Supreme Court explained that plaintiffs alleging employment discrimination claims need not allege facts to support each aspect of the *McDonnell Douglas* framework. 534 U.S. 506, 511 (2002). Rather, a plaintiff need only allege that the employer took an adverse employment action against her on the basis of her protected class. *Carlson*, 758 F.3d at 827; *see also Stumm v. Wilkie*, 796 F. App'x 292, 295 (7th Cir. 2019) (explaining in the ADEA context that "a plaintiff need plead only the type of discrimination, when it occurred, and by whom").

Here, Ponder alleges that she was terminated for several reasons, including because of her age and sex. In support, she alleges that the defendants replaced her with an individual of the same gender and age. But she further alleges that her replacement was temporary and that all the finalists for her position were young men. She alleges that the temporary replacement's hire was mere subterfuge for the

defendants' real intent. That is enough to satisfy the federal pleading standards for both age and sex discrimination.

Defendants argue that Ponder has pleaded herself out of court by alleging that her replacement was also a fifty-seven-year-old female. Dkt. 47, at 6. Not so. She has alleged that her replacement was temporary and pretextual and that the real intent was to replace her with a younger man. She supports that with an allegation that "her job duties and responsibilities have not been assumed by her replacement," *id.* at 5, and that the three finalists for her job were "young white males," *id.* at 4. That is enough for now. Whether there is any evidence to support that allegation will be determined in discovery.

### c. Equal Pay Act

Ponder alleges that the County "has historically discriminated against women" as department heads "in the compensation packages" they received and in the "treatment and respect" they received. Dkt. 44, at 5. Ponder further alleges that she "did not receive the same salary as male management employees despite her satisfactory job performance." *Id.* Interpreting these allegations to constitute a claim under the Equal Pay Act, the defendants move to dismiss.[5] Dkt. 47, at 7–8.

Defendants cite to *Wollenburg v. Comtech Mfg. Co.*, for the elements to a claim under the Equal Pay Act: a plaintiff must establish "(1) that different wages were paid to employees of the opposite sex, (2) that the employees do equal work

---

[5] Though Ponder's six-count complaint does not include a count citing the Equal Pay Act, it does not have to. *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) ("Skinner's complaint is not a model of the careful drafter's art, but under the Federal Rules of Civil Procedure, a complaint need not pin plaintiff's claim for relief to a precise legal theory.").

which requires equal skill, effort, and responsibility, and (3) that the employees have similar working conditions." 201 F.3d 973, 976 (7th Cir. 2000). The defendants contend that Ponder has failed to state a claim because she has failed to allege facts establishing each element. But the requirements of the federal pleading standards are not the same as those on summary judgment. "[I]t is manifestly inappropriate for a district court to demand that complaints contain all legal elements (or factors) plus facts corresponding to each." *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017). Ponder's allegations are sufficient to raise the plausible inference of liability. She has alleged that she was paid less than employees of the opposite sex and that she does similar work to those employees. Although she does not go into detail regarding their job responsibilities, she pleads enough by confining her allegations to men employed in management positions. Dkt. 44, at 5. Though she will need to prove each element of the claim to survive a summary judgment motion, her allegations are enough at this stage.

Although the motion to dismiss the Equal Pay Act is denied, the Court pauses to address an aspect of Ponder's response. According to Ponder, "[C]ounsel would remind the defendants that they fired the head of Human Resources. As such the allegations made by the plaintiff have weight." Dkt. 56, at 6. The clear implication is that because plaintiff was a human resources director, her allegations of discrimination carry more weight than allegations by other plaintiffs. This assertion is nonsense. A human resources director's claims in an employment discrimination action receive no additional weight or credibility than any other

10

plaintiff. Would counsel have the Court credit police and prosecutors' defenses in civil rights cases merely because of their professions? Lawyers are sued for malpractice. Trial judges are reversed. Moreover, most terminations involve the input of human resources departments as well as counsel, so why shouldn't the Court credit denials of employment discrimination because they are made by human resources directors and attorneys? Despite this nonsensical argument, the Equal Pay Act claim has been sufficiently pleaded, regardless of Ponder's past status as a human resources director.

### d. Count III—Due Process

In Count III, Ponder asserts that she was denied the Fourteenth Amendment's guarantee of due process because she was not afforded a pretermination hearing and a post-termination evidentiary hearing. Dkt. 44, at 7. Defendants move to dismiss that claim on the ground that Ponder has not alleged a property interest in her continued employment. Dkt. 47, at 8–11.

The Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "To state a claim for a procedural due process violation, a plaintiff must demonstrate (1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process." *Forgue v. City of Chicago*, 873 F.3d 962, 969 (7th Cir. 2017) (quoting *Manistee Apts., LLC v. City of Chicago*, 844 F.3d 630, 633 (7th Cir. 2016)). Defendants focus their argument for dismissal on the first requirement. Dkt. 47, at 8 ("Defendants contend the facts, as alleged by Plaintiff,

11

show she did not have a protected property interest in her continued employment with the County of Winnebago.").

Though the Fourteenth Amendment prohibits states from depriving persons of their property without due process of law, it does not define those property interests. That comes from state law. *Catinella v. Cnty. of Cook*, 881 F.3d 514, 518 (7th Cir. 2018). In Illinois, employment relationships without a fixed duration are presumed to be at will, and thus terminable at any time and for any reason.[6] *Cheli v. Taylorville Cmty. Sch. Dist.*, 986 F.3d 1035, 1039 (7th Cir. 2021). To overcome this presumption, so that the employee has a property interest in her continued employment, a plaintiff must be able to point to a "specific ordinance, state law, contract or understanding" that limits the public employer's ability to terminate her only for cause.[7] *Id.* But that understanding must be substantive rather than merely procedural. *Id.* (quoting *Moss v. Martin*, 473 F.3d 694, 700 (7th Cir. 2007)).

### 1. Probationary versus Permanent Employees

Though not argued by the parties, the Seventh Circuit has "found a distinction between probationary employees, who do not possess such an interest, and employees who have completed their probationary period, who do enjoy this right." *Common v. Williams*, 859 F.2d 467, 470 (7th Cir. 1988). This distinction was

---

[6] The presumption of at-will employment in Illinois exists as an "outgrowth of the notion of reciprocal rights and obligations in employment relationships—that if the employee can end his employment at any time under any condition, then the employer should have the same right." *Palmateer v. Int'l Harvester Co.*, 421 N.E.2d 876, 878 (Ill. 1981).

[7] This is a narrow exception, however, and the contract must be clear that the employee can *only* be terminated for cause. *Lashbrook v. Oerkfitz*, 65 F.3d 1339, 1347 (7th Cir. 1995) (explaining that the words "may dismiss any employee for just cause" did not mean that an employee could *only* be terminated for just cause).

not invoked by the allegations in Ponder's complaint or the parties' briefing, but it provides context for understanding the County of Winnebago Code of Ordinances, of which the Court takes judicial notice. *Minch v. City of Chicago*, 486 F.3d 294, 301 (7th Cir. 2007) (explaining that "courts may take judicial notice of local ordinances without resorting to summary judgment procedures").

The County requires that new employees go through an introductory employment period. And that requirement applies to everyone. County of Winnebago, Illinois, Code of Ordinances § 62-69(b) ("This policy applies to every employee of Winnebago County, including elected officials."). The only exception mentioned applies to employees operating under a collective bargaining agreement. *Id.* The next section of that ordinance then explains that "the successful completion of this introductory period does not change the at-will nature of the employment relationship." § 62-69(c). Thus, unlike the circumstances mentioned in *Common*, the County does not remove the at-will status of its public employees after completion of the required probationary period. On the contrary, the ordinance seems to provide that all employee relationships are at will, given that all employees must go through this introductory period, the completion of which does not change their at-will status.[8] Still, the County's Code of Ordinances does not explicitly provide that all employment relationships are at will. It merely implies that, so the Court continues.

---

[8] The ordinance on leaves of absence similarly evidences a policy of at-will employment. It provides, "Nothing in this policy is intended to alter the at-will status of any nonbargaining unit employee and this policy should not be construed as a contract or promise of continued employment." Winnebago County, Illinois, Code of Ordinances § 62-176.

### 2. Mutually Explicit Understanding

Statutes, ordinances, and regulations are not the only way in which a property interest in continued employment may arise. In *Perry v. Sindermann*, a teacher alleged a property interest in his continued employment based on a *de facto* tenure program. 408 U.S. 593, 599–600 (1972). Though not secured by a formal contract provision, he pointed to a section of the faculty guide, which explained that the school "wishes the faculty member to feel that he has permanent tenure as long as his teaching services are satisfactory and as long as he displays a cooperative attitude toward his co-workers and his superiors, and as long as he is happy in his work." *Id.* The Supreme Court held that written, rigid contracts or rules are not required, but that a property interest can be established if the proper parties had a "mutually explicit understanding" of continued employment absent sufficient cause for termination. *Id.* at 601.

Ponder alleges that she was not an at will employee and that she served "under the direction, discipline and management of the Winnebago County Board Chairman." Dkt. 44, at 7. She further alleges that she was "assured that she would continue on the job as long as she performed satisfactorily."[9] *Id.* Of course, all

---

[9] Though the Court analyzes whether the purported assurances allege a property interest, the Court does so merely to be thorough and to (hopefully) ensure that any subsequent briefing on this topic will be more useful. The Court, however, points out that Ponder's response to the motion to dismiss was at times irrelevant and at other times perfunctory at best. For example, when the defendants' opening brief rested merely on the relevant ordinances, Ponder did not endeavor to analyze the case law on "mutually explicit understandings" or whether simple assurances can create a property interest. Instead, Ponder's response merely noted, "The other interests that the court must consider are plaintiff [sic] verbal assurances that she would continue to be employed to retirement as long as she performed her job satisfactorily, as well as her pleading that she was employed

14

employees serve under the direction and management of a supervisor and are subject to disciplinary actions when warranted. That is nothing new. The only allegation in her complaint that supports her conclusion that she was not employed at will is the allegation that she was "assured that she would continue on the job as long as she performed satisfactorily." Dkt. 44, at 7.

Interpreting *Perry*, the Seventh Circuit in *Miller v. Crystal Lake Park District* explained that when the property right is not created by statute or regulation, the plaintiff must point to a legally enforceable equivalent expectancy. 47 F.3d 865, 867 (7th Cir. 1995). *Miller* further explained that "[m]utually binding obligation is just fancy language for 'contract.'" *Id.* That interpretation conforms to the language used in Illinois courts. In *Mullins v. Evans*, an Illinois appellate court recently explained, "It is settled that, absent legislative, administrative or contractual provisions to the contrary, a public employee in Illinois holds his office at the pleasure of the appointing power, which may remove him at any time." 2021 IL App. (1st) 191962, ¶ 39. The *Mullins* court further explained that the "plaintiff alleging a due process violation bears the burden of demonstrating that he had a property interest in his job, arising either out of a statute or regulation or from a contract with a public entity." *Id.* ¶ 40. Thus, oral assurances of continued employment can only create a property interest under Illinois law if those assurances create an oral or otherwise implied contract.

---

18 years by the defendant." Dkt. 56, at 8. That is not an argument, and future perfunctory and undeveloped attempts will be considered waived. *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991). Parties are expected to cite legal authority and develop arguments.

In *Lee v. County of Cook*, the Seventh Circuit contemplated factually similar assurances. 862 F.2d 139, 142–43 (7th Cir. 1988):

> Ms. Osterman's alleged statement to Ms. Lee is certainly not the sort of statement that creates a cognizable property interest. A first-line manager's statement that she does not intend to terminate an employee whose performance remains satisfactory cannot be construed reasonably as a grant of tenure. Ms. Osterman's statement that Ms. Lee's job was secure and would continue as long as she kept up the good work does not constitute an implied contract or mutually explicit understanding such as that contemplated by *Perry* or *Roth*.

*Id.* at 143 (internal quotation marks omitted). Furthermore, in *Common*, the Seventh Circuit noted that "informal assurances are not capable of varying formal provisions of state law." *Common*, 859 F.2d at 471–72. Here, that state law is the presumption that Illinois employment relationships are presumptively at will. *Duldulao v. St. Mary of Nazareth Hospital Center*, 505 N.E.2d 314, 317–18 (Ill. 1987).

Based on these cases, Ponder's ambiguous allegation that "[s]he was assured that she would continue on the job as long as she performed satisfactorily" fails to state a claim. She alleges no employment contract with the County that would rebut the at-will presumption. *Lee* and *Common* instruct that such informal assurances are insufficient to constitute an implied contract or understanding. Furthermore, the allegation fails to put the defendants on notice of the claim against them. *See Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014) (explaining the requirement of notice and plausibility). The allegation offers no insight into what assurances Ponder refers to. Her allegation uses the passive voice, so the Court and the defendants are left to speculate who made the assurances. Maybe we can guess

16

that former Chairman Haney made them, but she doesn't say. The Court is also left to speculate when the assurances were made, so the Court cannot say whether Haney even had hiring authority at that time. At bottom, nothing in the operative allegations can distinguish Ponder's alleged assurances from those in *Lee*.

### 3. Chairman Haney's Authority

Ponder began her eighteen-year employment with the County in September 2001. Dkt. 44, at 2. At some point, she was promoted to Human Resources Director, the role she held when she was terminated by the County Board in September 2019. *Id.* at 3. Over the years, the County Board has modified the ordinances governing the Human Resources Director position. Because Ponder does not allege when she ascended into that role, the Court cannot be certain which version of the ordinance was in effect when she began that job, which matters because the revisions effectively removed the Board Chairman's hiring authority over Ponder's job. Still, the parties seem to agree on the version that governs. Ponder asserts that her employment was "subject to the decision of the Winnebago County Board Chairman." Dkt. 56, at 7. The defendants similarly argue. They point to the 1992 version of the ordinance and argue that the Board Chairman's responsibility was to: "Select, employ, supervise, suspend, discharge or remove the following positions which are under the employment jurisdiction of the County Board: Purchasing Director, Director of Internal Services, Animal Services Director, Building Official, *Director of Human Resources*, Zoning Official, and Property Management Coordinator." Dkt. 47, at 10–11; Dkt. 47-5, at 7 (emphasis added).

17

The defendants argue that this ordinance provides only a procedural guarantee, which is not enough to establish a property right. Dkt. 47, at 11. Of course, they are correct that procedural guarantees do not create property rights in continued employment. *Cheli v. Taylorville Cmty. Sch. Dist.*, 986 F.3d 1035, 1039 (7th Cir. 2021). But if anything, they concede too much. Regardless, the Court declines to consider whether any procedural guarantee is found in the ordinance, because it does not matter. The ordinance only provides for the identity of the person responsible for hiring, supervising, and disciplining the Human Resources Director. Nothing in the text of the ordinance gives that person the authority to modify the County's standard employment practices or to bind the County to a contract creating a property interest in that employment. On the contrary, the plain text of the ordinance explains that the positions remain subject to the employment jurisdiction of the County Board. Dkt. 47-5, at 7.

All of this leads to an independent reason why the assurances, as alleged, cannot create a property interest. Any statements constituting a mutually explicit understanding can only be made "by a supervisor vested with proper authority" to bind the employer. *Lee v. Cnty. of Cook*, 862 F.2d 139, 143 (1988). Although contemplating summary judgment, *Hadley v. County of Du Page*, 715 F.2d 1238 (7th Cir. 1983) is similarly instructive. There, Robert Hadley worked for Du Page County for about fourteen years and was eventually promoted to Superintendent of Public Works. After an investigation into alleged mismanagement, Hadley was fired without a hearing. *Id.* at 1239. He argued that he was given verbal assurances of

his job security by incumbent members of the county board and other superiors. But the Seventh Circuit held that Hadley had not established a property interest in his continued employment because "individual board members in Illinois *do not* have the authority to bind a county to contracts." *Id.* at 1242. "No property interest can arise from the above-mentioned assurances since the County Board is not bound by the unofficial acts and statements of its individual members, and therefore cannot be a party to any mutually explicit understanding." *Id.* Thus, the court determined that Hadley had a mere "unilateral expectation." *Id.*

Ponder's complaint does not actually allege who offered her the assurances of continued employment. But even if the Court speculates that Haney was that person, that speculation would still not be enough. As the Court explained above, Haney lacked the authority to offer such assurances on his own. Though he may have had hiring and firing authority over Ponder, her job was still subject to the jurisdiction of the County Board. The only difference in these allegations and the facts in *Hadley* is that Haney was the chairman and not merely an individual board member. But regardless, he still lacked the power to individually bind the Board because the job remained subject to the Board's jurisdiction. Thus, just as in *Hadley*, Ponder had a mere unilateral expectation of continued employment.

### 4. Benefits as a Property Interest

In response to the defendants' motion to dismiss her due process claim, Ponder briefly asserts, without citation to any case law, that her pension membership creates a clear property right in her continued employment. Dkt. 56, at

8. Or maybe she means that the defendants deprived of her due process rights to her pension (independent of their alleged deprivation of her continued employment). She isn't clear on that. But regardless, neither argument prevails.

She cites Article XIII, Section V of the Illinois Constitution, which provides, "Membership in any pension or retirement system of the State, any unit of local government or school district, or any agency or instrumentality thereof, shall be an enforceable contractual relationship, the benefits of which shall not be diminished or impaired." That state constitutional provision clearly creates a property interest in an employee's earned pension or retirement fund. It says nothing about a property interest in continued employment. Though Ponder request "lost benefits" as part of her prayer for relief, her due process claim is unambiguously a contention that her employment was terminated in violation of her due process rights. Indeed, every factual allegation in that section speaks of her employment. She includes no facts to support any claim that she was denied any pension that she had acquired a property interest in. Thus, she has not alleged facts sufficient to plausibly allege a violation of her due process rights related to her pension.

Any contention that her pension created a property right in her continued employment fairs no better. In *Ericksen v. Village of Willow Springs*, a court in this district was asked the same question about the same retirement fund—the Illinois Municipal Retirement Fund. 876 F. Supp. 951, 956 (N.D. Ill. 1995). Quoting the Seventh Circuit's decision in *Shlay v. Montgomery*, 802 F.2d 918 (7th Cir. 1986), the court explained that the "pension plan and sick leave policy did not create a

20

protectible property interest in continued public employment." *Ericksen*, 876 F.
Supp. at 956. *Shlay* is still good law, and *Ericksen* was still rightly decided.

Furthermore, the fact that some courts mention benefits in this context has
never meant that the mere existence of a retirement fund or pension constitutes a
protectible property interest in continued employment. If it did, a great many
employees (virtually all seasoned veterans of Illinois municipal governments) would
have that property interest. But that is not what courts mean. Rather, "continued
employment" is just another type of benefit that an employee can acquire a property
interest in. The Seventh Circuit said as much in *Covell v. Menkis*, 595 F.3d 673 (7th
Cir. 2010). There, the Seventh Circuit explained, "A person's interest in a benefit,
*such as continued employment*, constitutes 'property' for due process purposes only
if 'there are such rules or mutually explicit understandings that support his claim of
entitlement to that benefit.'" *Id.* at 675–76 (quoting *Border v. City of Crystal Lake*,
75 F.3d 270, 273 (7th Cir. 1996)) (emphasis added). In other words, continued
employment is just another type of benefit. Because Ponder has not sufficiently
alleged a property interest in that benefit, her due process claim cannot survive the
defendants' motion to dismiss.

### e. Counts IV and V—Retaliatory Discharge

In Counts IV and V, Ponder alleges retaliatory discharge in violation of
Illinois state law. The retaliatory discharge tort is an exception to the general rule
of at-will employment in Illinois that arose as way of "acknowledg[ing] the common
law principle that parties to a contract may not incorporate in it rights and

21

obligations which are clearly injurious to the public." *Palmateer v. Int'l Harvester Co.*, 421 N.E.2d 876, 878 (Ill. 1981). A claim of retaliatory discharge in Illinois contains two elements: (1) at-will employment, and (2) acts that violate public policy. *Petrik v. Monarch Printing Co.*, 444 N.E.2d 588, 590 (Ill. App. Ct. 1982) (citing *Palmateer v. Int'l Harvester Co.*, 421 N.E.2d 876 (Ill. 1981)). Whether a clearly mandated public policy exists, and whether it was violated because of the discharge, is a matter of law to be resolved by the court. *DePietro v. GATX Corp.*, 2020 IL App. (1st) 192196 ¶ 40. Furthermore, retaliatory discharge is a narrow exception to the general rule of at-will employment. "The Illinois Supreme Court 'has consistently sought to restrict the common law tort of retaliatory discharge.'" *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 708 (7th Cir. 2004) (quoting *Fisher v. Lexington Health Care, Inc.*, 722 N.E.2d 1115, 1121 (Ill. 1999)).

Of course, the obvious inconsistency here is that these claims can only exist if Ponder was an at-will employee, while her due process claim can only exist if she was not. Still, she can plead alternative theories. Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defense as it has, regardless of consistency."). And the defendants rest their argument for dismissal of her retaliatory discharge claims on the contention that her termination did not run afoul of any clear Illinois public policy. She pleads two counts, and thus two purported public policies. Count IV speaks of the County's anti-nepotism policy. Dkt. 44, at 9. Count V speaks to her alleged honesty in a sexual harassment investigation. *Id.* at 11–12.

22

### 1. Count IV—Nepotism

Ponder cites the County's anti-nepotism ordinance and contends that she was terminated in violation of that public policy. To clarify, she contends that the County "has hired many employees related to present and past county board members" and that her job as Director of Human Resources sometimes required her to discipline those employees. Dkt. 44, at 9. That apparently did not sit well with some board members, who allegedly warned Ponder "on more than on [sic] occasion . . . that she should modify her position with regard to these disciplined employees or her job would be in jeopardy." *Id.* at 10. In other words, she asserts that her job required that she discipline, and potentially discharge, some employees that happened to be related to board members, and she was eventually fired (in part at least) for doing her job.

Assuming she invokes the operative anti-nepotism policy (prior versions exist, but no mention of which version is relevant), it reads, "Any person in a relationship . . . which is with an elected member of the Winnebago County Board, the county board chairman, employees of the county board office, or employees of the county human resource office shall not be hired for any position in Winnebago County." County of Winnebago, Illinois, Code of Ordinances § 62-3(c)(4). The ordinance also defines relationship as any member of the same household, a spouse, child, parent, brother, sister, grandparent, grandchild, aunt, uncle, niece, nephew, any step-relative, and any in-laws. *Id.* § 62-3(c)(1). Taking Ponder's allegations as true, the County Board did not follow this rule.

23

But a local ordinance cannot form the basis of a clear public policy mandate for the purpose of the retaliatory discharge tort. The language used by the courts makes that clear—though no Illinois appellate court has squarely decided the question. About thirty-five years ago, the Supreme Court of Illinois was asked to answer this question in *Gould v. Campbell's Ambulance Serv., Inc.*, but it declined to do so. 488 N.E.2d 993, 995 (Ill. 1986) (explaining "nor do we hold that an ordinance may not under any circumstances declare the mandated public policy required by *Palmateer*"). But the clearly mandated public policies at issue in retaliatory discharge claims are those that concern "what is right and just, and what affects the citizens *of the State collectively*." *McKay v. Pinkerton's, Inc.*, 607 N.E.2d 237, 239 (Ill. App. Ct. 1992) (emphasis added). If the public policy must affect the citizens of Illinois collectively, then one is left to wonder how a local county ordinance could do that. And Illinois courts often explain that the clearly mandated public policy "is to be found in the State's constitution and statutes and, when they are silent, in its judicial decisions." *Fredrick v. Simmons Airlines*, 144 F.3d 500, 504 (7th Cir. 1998) (quoting *Palmateer*, 421 N.E.2d at 878). No mention of local ordinances.[10] Thus, the type of public policy contemplated by the Illinois retaliatory discharge tort excludes purely local matters like county ordinances.

In response, Ponder points to the Shakman litigation in Cook County. Dkt. 56, at 9. On that argument, the defendants rightly replied that it had nothing to do

---

[10] *DiPietro v. GATX Corp.*, 2020 IL App. (1st) 192196 contemplated a Chicago ordinance, but that court did not consider whether an ordinance could form the basis of a clearly mandated public policy affecting the citizens of the State of Illinois.

with the State as a whole or with Winnebago County, thus invoking the question of scope. Dkt. 59, at 8. Undeterred, Ponder points to other examples in which the State has attempted to rid itself of nepotism. She points to an executive order and Public Act 97-0813. She also points to *Boswell v. City of Chicago*, 69 N.E.3d 379 (Ill. App. Ct. 2016). At least the Court thinks she means that case—though the Court can't be sure because she spells it wrong and errs in citation. Regardless, that case is irrelevant because it had nothing to do with retaliatory discharge. But even if these sources convey a public policy against nepotism, she still fails to state a claim.

At bottom, Ponder does not allege that she was fired for enforcing the County's policy against nepotism—or anyone's policy against nepotism. Dkt. 47, at 12–13 (arguing in part that Ponder has not alleged how the violation of a public policy led to her termination). After all, she does not allege that she sought out individuals hired in violation of that policy so that she could reverse that inappropriate hiring decision. Instead, on her telling of the story, she merely did her job to discipline employees that ran afoul of other rules, and some of those individuals just happened to be related to board members. Dkt. 44, at 9 ("On more than one occasion those employees related to county board members have been the subject to [sic] employee discipline including termination.").

So, she was just fired for doing her job. That is not the same thing as being fired in retaliation for enforcing a clear public policy mandate, as might be the case if she were fired for refusing to hire people in violation of that rule or if she sought to otherwise enforce the rule by reversing all such inappropriate hiring decisions at

25

large. And that causal element is important. *O'Regan v. Arbitration Forums*, 121 F.3d 1060, 1064 (7th Cir. 1997) (affirming dismissal and explaining that "the public policy point is weak; but in any event O'Regan's claim fails because she has failed to allege facts showing that she was discharged *in retaliation*.") (emphasis in original). She has not alleged anything of the sort, and so she has stated no claim.

### 2. Count V—Sexual Harassment (or maybe honesty)

In Ponder's second retaliatory discharge claim, she alleges that she was interviewed by outside counsel as part of County Administrator Carla Paschal's sexual harassment allegation against Frank Haney—the former Board Chairman. Ponder alleges that she told the investigator that Haney had not sexually harassed Paschal, and that he had instead "bullied and brow beaten" her. Dkt. 44, at 11–12. She also alleges that she told the investigator that the County Board had created a hostile work environment for everyone, and that she was fired for those statements. *Id.* at 12. She continues that, when Paschal discovered that Ponder failed to substantiate the sexual harassment accusation, Paschal "caused a report to issue critical of" Ponder and that the report was used as pretext to terminate Ponder's employment. *Id.*

In her response brief, Ponder conceptualizes the public policy at issue as a policy of "preventing sexual harassment, preventing or working to eliminate a hostile work place and elimination of bulling in the work place." Dkt. 56, at 10. She then invokes honesty. *Id.* Critically, Ponder's complaint never comes close to alleging that she was terminated in violation of a policy against sexual harassment.

On the contrary, she was the one that said Haney did not sexually harass the County Administrator. She cannot claim a lack of sexual harassment and then assert that she was fired in retaliation for enforcing a policy against sexual harassment. Again, that is nonsense.

She is left with the argument that she was fired in retaliation for promoting honesty in investigations and for purportedly telling the truth about the existence of a hostile work environment. Although veracity is a virtue all should strive for, it is a personal matter. And the law is clear, as the defendants point out, that matters of a personal nature are not clearly mandated public policy under the retaliatory discharge tort. *Palmateer*, 421 N.E.2d at 878. Furthermore, in *Turner v. Memorial Medical Center*, the Supreme Court of Illinois clarified that such "generalized expressions of public policy" are too vague and cannot be recognized as clear mandates for the purpose of the retaliatory discharge tort. 911 N.E. 2d 369 (Ill. 2009). In holding that the general concept of patient safety, by itself, was too generalized, the court reiterated, "An employer should not be exposed to liability where a public policy standard is too generalized to provide specific guidance or is so vague that it is subject to different interpretations." *Id.* at 375. In the end, a plaintiff must point to a "specific expression of public policy." *Id.* at 376. Because the general concept of honesty is not such a specific expression, invoking that noble virtue states no claim under the Illinois retaliatory discharge tort.

27

### f.   Count VI—Family and Medical Leave Act (FMLA)

Count VI of Ponder's complaint asserts a claim under the Family and Medical Leave Act. Dkt. 44, at 13 (noting that "she was still on Family Medical Leave and Winnebago County approved Administrative leave"). Defendants assert that the complaint is not clear regarding what type of FMLA claim Ponder brings. Further, they argue that the allegations do not support either a retaliation claim under the FMLA or an interference claim. Dkt. 47, at 14–15. Ponder's response appears to confirm that she claims retaliation under the FMLA. Dkt. 56, at 10–11 ("Plaintiff has alleged more than necessary to demonstrate engagement in a statutorily protected activity, that the defendants fired her, and that protected activity, i.e. being on leave related to her termination.").[11]

The FMLA prohibits covered employers from discharging, or otherwise discriminating against, any person that opposes any practice made unlawful by the FMLA. 28 U.S.C. § 2615(a)(2). In other words, don't retaliate. To prove a claim of retaliation under the FMLA, a plaintiff must establish three elements: (1) that she engaged in FMLA protected activity, (2) that she suffered an adverse employment action, and (3) that the protected activity caused the adverse action. *Freelain v. Vill.*

---

[11] Ponder makes the same nonsensical argument that because of her status as a former human resources director, her pleadings receive some kind of heightened validation. Dkt. 56, at 10 ("[I]t is likely that she not only has the benefit of having the law on her side . . . but there is a good chance her allegations are true."). This Court treats parties equally and has granted summary judgment against other human resources directors. *See Worden v. FCA US LLC*, Case No. 3:18-cv-50413, 2021 U.S. Dist. LEXIS 108949 (N.D. Ill. Jun. 10, 2021).

*of Oak Park*, 888 F.3d 895, 901 (7th Cir. 2018). Of course, a plaintiff would also need to prove that she meets the FMLA's eligibility requirements. 28 U.S.C. § 2611(2)(A).

Here again, although that is what a plaintiff must *establish* to withstand a motion for summary judgment, she does not have to plead facts to support each element of a claim to withstand a motion to dismiss. *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017) ("[I]t is manifestly inappropriate for a district court to demand that complaints contain all legal elements (or factors) plus facts corresponding to each."). But a plaintiff's allegations must be enough to raise the plausible inference that the defendant is liable for the misconduct alleged. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Here, Ponder does not alleges facts supporting each element but she does not have to. She alleges that she was engaged in an FMLA-protected activity—that she was on FMLA leave. She also alleges an adverse employment action—that she was fired while on FMLA leave. That is enough. Though she does not allege the causal element, the Seventh Circuit has been clear that plaintiffs are not required to allege facts supporting every element of a claim. *Chapman*, 875 F.3d at 848. Regardless, her allegations that she was fired while on leave raise the plausible inference that availing herself of her rights under the FMLA was one of the causes of her termination. At this stage, the Court only deals in allegations, not proofs. But her allegations paint a picture in which the County and its board members were looking for any reason to fire her. At this stage, the Court holds only that her FMLA claim is plausible. Thus, the defendants' motion to dismiss Count VI is denied.

### III.   Conclusion

For the reasons explained above, the defendants' motion to dismiss [46], is granted in part and denied in part. The Court denies the defendants' motion to dismiss Ponder sex and age discrimination claims, her claim under the Family and Medical Leave Act, and her Equal Pay Act claim. The Court grants, however, the defendants' motion to dismiss Ponder's Due Process claim and her claims under the Illinois retaliatory discharge tort. Still, the dismissals are without prejudice. The Court grants Ponder leave to amend her complaint consistent with Rule 11 to repair the errors explained above.  The Court cautions counsel to think long and hard on whether Ponder should replead these claims, in part, because they are contradictory.  If Ponder is not an at-will employee as she asserts under her Due Process theory, then she cannot establish a retaliatory discharge claim. *Petrik v. Monarch Printing Co.*, 444 N.E.2d 588, 590 (Ill. App. Ct. 1982).  If she chooses to avail herself of that opportunity, she must do so by August 27, 2021. Otherwise, the dismissals will be with prejudice.

Date:  July 30, 2021

Honorable Iain D. Johnston
United States District Judge

30